IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:12-CR-181-D

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| QUENTIN EARL BATTLE, | ) | |
| | ) | |
| Defendant. | ) | |

On April 9, 2021, Quentin Earl Battle ("Battle" or "defendant") moved pro se for a sentence reduction under section 404 of the First Step Act of 2018 ("First Step Act"), Pub. L. No. 115-391, § 404, 132 Stat. 5194, 5222. See [D.E. 79].[1] On September 8, 2021, Battle, proceeding through counsel, recast his motion as a motion for compassionate release under the First Step Act, § 603(b), 132 Stat. at 5238-41 (codified as amended at 18 U.S.C. § 3582). See [D.E. 82]. On October 19, 2021, the government responded in opposition [D.E. 86]. On October 21, 2021, Battle replied [D.E. 88]. As explained below, the court denies Battle's motion.

I.

On August 10, 2012, pursuant to a written plea agreement, Battle pleaded guilty to conspiracy to distribute and possess with the intent to distribute 5 kilograms or more of cocaine, 280 grams or more cocaine base (crack), and a quantity of heroin in violation of 21 U.S.C. §§ 841(a) and 846

---

[1] Battle framed his initial motion as a request for a sentence reduction under section 404 of the First Step Act. Battle is not eligible for such relief. Battle was charged in 2012 and sentenced in 2013 in accordance with the Fair Sentencing Act of 2010. See First Step Act, § 404(c), 132 Stat. at 5222 ("No court shall entertain a motion under this section to reduce a sentence if the sentence was previously imposed or previously reduced in accordance with . . . the Fair Sentencing Act of 2010."). Thus, to the extent Battle seeks a sentence reduction under section 404 of the First Step Act, the court denies the motion.

(count one), and money laundering in violation of 18 U.S.C. § 1956 (count two). See [D.E. 21, 31, 34, 64]. On March 21, 2013, the court held Battle's sentencing hearing and adopted the facts set forth in the Presentence Investigation Report ("PSR"). See Fed. R. Crim. P. 32(i)(3)(A)–(B); PSR [D.E. 43]; [D.E. 53, 54]; Sentencing Tr. [D.E. 65] 4–5. After resolving Battle's objections to the PSR, the court calculated Battles's total offense level to be 41, his criminal history category to be III, and his advisory guideline range to be 360 months to life imprisonment on count one and 240 months' imprisonment on count two. See Sentencing Tr. at 49. After considering the arguments of counsel and all relevant factors under 18 U.S.C. § 3553(a), the court sentenced Battle to 420 months' imprisonment on count one and 240 months' imprisonment on count two, to run concurrently. See id. at 58–62; [D.E. 54]. On April 1, 2013, Battle appealed. See [D.E. 56]. On March 11, 2014, the United States Court of Appeals for the Fourth Circuit affirmed this court's judgment. See United States v. Battle, 560 F. App'x 206 (4th Cir. 2014) (per curiam) (unpublished).

II.

On December 21, 2018, the First Step Act went into effect. See First Step Act, 132 Stat. at 5249. Before the First Step Act, only the Director of the Bureau of Prisons ("BOP") could file a motion for compassionate release. Under the First Step Act, a sentencing court may modify a sentence of imprisonment either upon a motion of the Director of the BOP "or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

After a defendant meets the exhaustion requirement, a defendant must (1) demonstrate "extraordinary and compelling reasons" for a sentence reduction, or (2) be at least 70 years old, have served at least 30 years in prison, and have the Director of the BOP determine that the defendant is

2

not a danger to the safety of another person or the community. Id. In deciding to reduce a sentence under section 3582(c)(1)(A), a court must consult the sentencing factors in 18 U.S.C. § 3553(a) and must ensure that a sentence reduction is "consistent with applicable policy statements" of the United States Sentencing Commission (the "Commission"). Id.

The Commission policy statements include U.S.S.G. § 1B1.13. Section 1B1.13 essentially parrots section 3582(c)(1)(A)'s requirements and adds that the defendant not be "a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2). Section 1B1.13's application notes provide examples of extraordinary and compelling reasons, including: (A) serious medical conditions of the defendant, (B) advanced age of the defendant when coupled with a serious deterioration in physical and mental health due to aging and having served at least 10 years or 75% of his or her imprisonment term (whichever is less), (C) family circumstances, or (D) another extraordinary and compelling reason. See U.S.S.G. § 1B1.13 cmt. n.1.[2] Application note 2 states

---

[2] Application note 1 to U.S.S.G. § 1B1.13 states in full:

1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:

   (A) Medical Condition of the Defendant.—

   (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

   (ii) The defendant is—

   (I) suffering from a serious physical or medical condition,

   (II) suffering from a serious functional or cognitive impairment,

3

that "an extraordinary and compelling reason need not have been unforeseen at the time of sentencing to warrant a reduction in the term of imprisonment." U.S.S.G. § 1B1.13 cmt. n.2. Thus, the fact "that an extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court does not preclude consideration for a reduction under this policy statement." Id. Application note 3 states, "[p]ursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." U.S.S.G. § 1B1.13 cmt. n.3.

---

> or
>
> > (III) experiencing deteriorating physical or mental health because of the aging process,
> >
> > that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (B) Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
>
> (C) Family Circumstances.—
>
> > (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
> >
> > (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
>
> (D) Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 cmt. n.1.

4

The Commission has lacked a quorum since Congress enacted the First Step Act and has not updated U.S.S.G. § 1B1.13 to account for the First Step Act. Accordingly, section 1B1.13 does not provide a policy where an inmate files a motion for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A). See, e.g., United States v. High, 997 F.3d 181, 186 (4th Cir. 2021); United States v. Kibble, 992 F.3d 326, 330–31 (4th Cir.), cert. denied, 142 S. Ct. 383 (2021); United States v. McCoy, 981 F.3d 271, 280–84 (4th Cir. 2020). Rather, "[section] 1B1.13 only applies when a request for compassionate release is made upon motion of the Director of the [BOP]." Kibble, 992 F.3d at 330–31. Nevertheless, section 1B1.13 provides informative policy when assessing an inmate's motion, but a court independently determines whether "extraordinary and compelling reasons" warrant a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i). See High, 997 F.3d at 186; McCoy, 981 F.3d at 284. In doing so, the court consults not only U.S.S.G. § 1B1.13, but also the text of 18 U.S.C. § 3582(c)(1)(A) and the section 3553(a) factors. See, e.g., McCoy, 981 F.3d at 280–84; United States v. Jones, 980 F.3d 1098, 1101–03 (6th Cir. 2020); United States v. Gunn, 980 F.3d 1178, 1180–81 (7th Cir. 2020); United States v. Ruffin, 978 F.3d 1000, 1007–08 (6th Cir. 2020); United States v. Brooker, 976 F.3d 228, 237–38 (2d Cir. 2020); United States v. Clark, No. 1:09cr336-1, 2020 WL 1874140, at *2 (M.D.N.C. Apr. 15, 2020) (unpublished).

On July 29, 2021, Battle applied to the warden at FCI Petersburg for compassionate release. See [D.E. 82-3]. On August 20, 2021, the warden denied Battle's request. See [D.E. 82-4]. Therefore, Battle has met the exhaustion requirement, and the court addresses his motion on the merits. Cf. United States v. Muhammad, 16 F.4th. 126, 130 (4th Cir. 2021).

Battle seeks compassionate release pursuant to section 3582(c)(1)(A) and cites the COVID-19 pandemic, his health conditions, his rehabilitation efforts, his supportive family, and his release plan. See [D.E. 82] 2–13. As for the medical condition of the defendant policy statement, the policy

5

statement requires that the defendant be "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A)(ii). Battle argues that his obesity, hypertension, hemolytic anemia, Vitamin B12 deficient anemia, Hepatitis B, and residual pain from injuries sustained in a car accident put him at heightened risk of serious infection from COVID-19. See [D.E. 82] 4. Battle contends the BOP has done a poor job treating him while incarcerated, especially concerning his anemia diagnoses, and has failed to keep him informed of his medical conditions. See id. at 4–7. Battle also contends that the BOP is not treating him for his Hepatitis B. See id. at 5–6. The government responds that the BOP is monitoring Battle's conditions in several chronic care clinics, has provided medical testing, and has given Battle medications for his conditions, including his anemias. See [D.E. 86] 4–5; [D.E. 86-1] (medical records).

The BOP is appropriately treating Battle for his medical conditions. To the extent Battle requires further treatment for Hepatitis B, the court trusts the BOP will provide that treatment.

Battle also references studies about the severity of COVID-19, the effect of certain conditions on that risk, the efficacy of vaccines, and the difficulty of controlling COVID-19 in prison. See [D.E. 82] 4, 8; [D.E. 88] 4–7. Battle has received two doses of a COVID-19 vaccine. See [D.E. 86] 5; [D.E. 86-1] 20; cf. United States v. Broadfield, 5 F.4th 801, 803 (7th Cir. 2021) ("[F]or the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release."); see also United States v. Baeza-Vargas, No. No. CR-10-00448-010-PHX-JAT, 2021 WL 1250349, at *2–4 (D. Ariz. Apr. 5, 2021) (collecting cases showing the "growing consensus" of district courts that have ruled that an inmate receiving a COVID-19 vaccine "weighs against a finding of extraordinary and

6

compelling circumstances"). Considering Battle's medical conditions, the BOP's treatment of those conditions, and Battle's vaccinated status, reducing Battle's sentence does not comport with application note 1(A). See 18 U.S.C. § 3582(c)(1)(A).

As for the "other reasons" policy statement, the court assumes without deciding that the COVID-19 pandemic, Battle's health conditions, his efforts at rehabilitation, his supportive family, and his release plan are compelling reasons under section 3582(c)(1)(A). Cf. United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."). However, Battle's vaccinated status greatly diminishes the risk to Battle from COVID-19. Cf. Broadfield, 5 F.4th at 803; Baeza-Vargas, 2021 WL 1250349, at *2–4. Moreover, the section 3553(a) factors counsel against reducing Battle's sentence. See High, 997 F.3d at 187–91; Kibble, 992 F.3d at 331–32; United States v. Chambliss, 948 F.3d 691, 693–94 (5th Cir. 2020); Clark, 2020 WL 1874140, at *3–8.

Battle is 48 years old and is incarcerated for conspiracy to distribute and possess with the intent to distribute 5 kilograms or more of cocaine, 280 grams or more of cocaine base (crack), and a quantity of heroin, and money laundering. See PSR ¶¶ 1–3; [D.E. 54]. Battle and a co-conspirator ran a huge, decade-long drug-trafficking organization in Nash County, North Carolina. See PSR ¶ 23. Battle possessed numerous firearms in connection with his drug trafficking, including a shotgun, two handguns, and three assault rifles. See id. ¶¶ 24–25. Battle also maintained a premises in furtherance of his drug trafficking. See id. ¶ 27. Battle had laundered his drug-trafficking money through multiple car purchases, a home purchase, and the purchase of a bowling business. See id. ¶ 26. Battle was a leader in his drug-trafficking operation and was accountable for distributing 97.96

7

kilograms of cocaine and 26.91 kilograms of crack cocaine. See id. ¶ 27. When Battle engaged in his extensive drug trafficking, Battle had convictions for simple assault and unlawfully carrying a concealed weapon. See id. ¶¶ 30–31. Moreover, Battle has a poor record on supervision, having operated his drug-trafficking conspiracy while on probation. See id. ¶¶ 23–34.

Battle has made some positive efforts while federally incarcerated. See [D.E. 82] 11–12. For example, Battle has completed numerous education and vocational training courses. See id.; [D.E. 82-9] 1–2; [D.E. 82-10]. Battle has also maintained employment while incarcerated and has paid off his financial obligations. See [D.E. 82] 11; [D.E. 82-8]; [D.E. 82-9] 3. Nonetheless, Battle incurred one infraction in 2015 while federally incarcerated. See [D.E. 82] 12; [D.E. 82-11].

The court must balance Battles's positive efforts with his terrible criminal conduct and criminal history, his mixed performance in federal custody, his poor performance on supervision, the need to punish him, the need to promote respect for the law, the need to protect society, and the need to deter others. Cf. Pepper v. United States, 562 U.S. 476, 480–81 (2011); High, 997 F.3d at 187–91; United States v. McDonald, 986 F.3d 402, 412 (4th Cir. 2021); United States v. Martin, 916 F.3d 389, 398 (4th Cir. 2019). The court also has considered Battles's potential exposure to COVID-19, his medical conditions, the BOP's treatment of those conditions, and his rehabilitative efforts. The court recognizes that Battle has a supportive family and friends who would help him if he was released. See [D.E. 82] 12; [D.E. 82-12] 23–30. Having considered the entire record, the extensive steps that the BOP has taken to address COVID-19, the section 3553(a) factors, Battle's arguments, the government's persuasive response, the need to punish Battle for his serious criminal behavior, to incapacitate Battle, to promote respect for the law, to deter others, and to protect society, the court denies Battle's motion for compassionate release. See, e.g., Chavez-Meza v. United States, 138 S. Ct. 1959, 1966–68 (2018); High, 997 F.3d at 187–91; Ruffin, 978 F.3d at 1008–09; Chambliss, 948

F.3d at 693–94; United States v. Hill, No. 4:13-CR-28-BR, 2020 WL 205515, at *2 (E.D.N.C. Jan. 13, 2020) (unpublished), aff'd, 809 F. App'x 161 (4th Cir. 2020) (per curiam) (unpublished).

III.

In sum, the court DENIES defendant's motion for compassionate release [D.E. 79].

SO ORDERED. This 1 day of March, 2022.

                                            JAMES C. DEVER III
                                            United States District Judge